UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID E. SNIDER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:18-cv-00250-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, David E. Snider ("Snider") filed his complaint in this Court seeking reversal of the Social Security Commissioner's final decision to deny his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court reverses and remands the decision of the Commissioner of the Social Security Administration ("SSA").

**I.     OVERVIEW OF THE CASE**

Snider alleges an onset of disability on August 30, 2013, based on limitations arising from permanent nerve damage in his right arm, chronic back pain, lumbar degenerative disc disease, spina bifida, bilateral carpal tunnel, diabetes, chronic ankle pain, poor memory and balance issues following a stroke, vascular dementia, cervicalgia/cervicogenic headaches, and cubital tunnel syndrome. Snider was 50 years

old on the alleged onset date. Snider completed high school and worked as a shipping and receiving clerk and a tractor trailer truck driver before the alleged onset date.

Snider's applications for DIB and SSI on December 19, 2014, were denied initially and upon reconsideration. Following a March 9, 2017, hearing, the Administrative Law Judge ("ALJ") issued a decision on April 17, 2017, affirming the SSA's denial of benefits. The ALJ found that Snider is not able to perform any past relevant work. [DE 10 at 54–55]. The ALJ reached this conclusion after finding that Snider has (1) moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself and (2) the residual functional capacity ("RFC") to perform light work as defined by the Social Security regulations[1] with some limitations. [*Id.* at 48–49]. The ALJ further found, based upon the testimony of the vocational expert, that Snider can to meet the requirements for employment as a bench assembler, electronics worker, and production assembler as those jobs are defined by the Dictionary of Occupational Titles. [*Id.* at 55]. Accordingly, the ALJ denied Snider's claims for benefits.

On February 7, 2018, the Appeals Council denied Snider's request for review, making the ALJ's decision the final decision of the Commissioner.

## II.   DISABILITY STANDARD

In order to qualify for DIB or SSI, a claimant must be "disabled" under the Social Security Act ("Act"). A person is disabled under the Act if "he or she has an inability to

---

[1] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. This order will only refer to 20 C.F.R. § 404 for efficiency.

2

engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for disability benefits under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. § 404.1520; *see also Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

On judicial review, the Act requires that the Court accept the Commissioner's factual findings as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Clifford*, 227 F.3d at 869. Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). The ALJ must build a logical bridge from the evidence to his conclusion and a reviewing court is not to substitute its own opinion for that of the ALJ, or to re-weigh the evidence. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Even if an ALJ commits a legal or factual error, the error does not warrant remand unless it is harmful. *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010).

Minimally, an ALJ must articulate his analysis of the evidence to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2005). In reaching his decision, an ALJ must "consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). However, the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ must simply

4

provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

IV. **ANALYSIS**

    A. **Issues for Review**

In challenging the ALJ's decision, Snider's concerns focus on three alleged errors in the RFC determination. A claimant's RFC is the most activity in which he can engage in a work setting despite the physical and mental limitations that arise from his impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). Here, the ALJ found that Snider has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) where [he] can occasionally climb ramps and stairs, but must avoid ladders, ropes, and scaffolds. . . . can occasionally balance, stoop, kneel, crouch, and crawl. . . . can remember and follow simple but not detailed instructions, and can perform assigned tasks but not always at a production rate pace, but can meet end of day goals. . . . can occasionally adapt to rapid changes. . . . can frequently perform handling and fingering bilaterally.

[DE 10 at 49]. Snider alleges that in defining his RFC, the ALJ (1) improperly weighed the medical opinion evidence, particularly the opinion of his primary care physician, Christopher Ricketts, M.D.; (2) improperly discounted his symptom testimony and failed to consider his impairments in combination; and (3) failed to account for the moderate limitations arising from his mental impairments. Based on these alleged, harmful errors, Snider argues that the ALJ's RFC assessment is unsupported by substantial evidence and requests remand.

5

### B. Weight of Medical Opinion Evidence

#### 1. Relevant Background

In support of his disability applications, Snider submitted medical records from various treating physicians including his primary care physician, Dr. Ricketts. Snider made no fewer than 29 visits to Dr. Ricketts between October 2014 and February 2017. Dr. Ricketts treated Snider's chronic health conditions, ordered imaging and testing, and referred Snider to multiple specialists, including a gastroenterologist, neurologists, pain management doctors, and physical therapists. Dr. Ricketts also provided a Medical Source Statement ("MSS") dated January 26, 2017, in which he opined that Snider could lift twenty pounds occasionally and less than ten pounds frequently; could stand and walk less than two hours and sit less than two hours in an eight-hour workday; needed to alternate between sitting and standing/walking; would need to lie down once a shift; had limited ability to reach, handle, finger, feel, push, and pull; needed written reminders due to dementia; and would be absent from work more than four days per month due to his impairments or treatment. [DE 10 at 1435-36]. The ALJ granted only "little evidentiary weight" to Dr. Ricketts' opinions stating that "these opinions are not consistent with his longitudinal treatment history, which is reflective of essentially conservative care." [DE 10 at 54].

Snider's care had included ankle surgery in November 2011, anterior decompression surgery with instrumentation and fusion in September 2012, right carpal tunnel release surgery in January 2015, cubital tunnel releases in January 2015 and May 2016, and left carpal tunnel release surgery in November 2015. Dr. Ricketts specifically

6

referred Snider to pain management doctors in 2015. From about October 2015 through October 2016, Snider underwent pain reduction procedures including medical branch blocks, radiofrequency nerve ablation, lumbar epidural steroid injections, and knee injection. Additionally, Snider was prescribed pain medications directed at his musculoskeletal issues as well as his headaches or migraines. Further, Snider was evaluated in February 2017 by Dr. Thomas Curfman, a neurologist referred by Dr. Ricketts, to address Snider's reportedly worsening memory problems. The ALJ reported Snider's chronology of treatment generally in her decision before concluding that Dr. Ricketts' opinions were only worthy of little evidentiary weight. [DE 10 at 49–54].

In support of her discounting of Dr. Ricketts' opinions, the ALJ simply cited to four exhibits, which included Dr. Ricketts' Office Treatment Records from October 23, 2014, through February 3, 2017. The records in these four exhibits constitute almost 40 of the approximately 1000 pages of Snider's medical records presented to the ALJ for consideration. The ALJ's decision only references parts of two of the four exhibits she cited. For instance, the ALJ noted that as his February 2015 office visit, Snider "reported that he was doing well from his carpal tunnel syndrome release [in January 2015], and overall, he felt well . . . . [and] that the Wellbutrin had helped his mood, but that he had started smoking again and wanted Chantix for smoking cessation." [DE 10 at 52].

As part of the disability process, State Agency medical and psychological consultants also examined Snider in August 2014 and February 2015. Then non-examining, consultative physicians reviewed Snider's medical records and opined about his limitations. In February 2015, a reviewing psychologist determined that

7

Snider has a severe mental impairment and assessed him with moderate restrictions in activities of daily living, social functioning, and maintaining concentration, persistence, and pace. The reviewing psychologist then opined that Snider retains the mental RFC to understand, remember, and carry out unskilled tasks, relate on at least a superficial and ongoing basis with co-workers and supervisors, attend to tasks for sufficient periods of time to complete tasks, and manage the stresses involved with unskilled work. [DE 10 at 142–43]. The consultative psychologist's opinion was confirmed by a second non-examining State Agency psychologist in July 2015.

In March 2015, a reviewing physician assessed Snider's physical impairments and opined that he retains an RFC for light work but limited to frequently climbing ramps and stairs; occasionally climbing ropes, ladders, and scaffolds; and frequently balancing, stopping, kneeling, crouching, and crawling. [DE 10 at 139–41]. The consultative physician's opinion was confirmed by another non-examining State Agency physician in July 2015.

The ALJ granted some weight to the opinions of the State Agency medical and psychological consultants. As she did with regard to Dr. Ricketts' opinions reflected in his MSS, the ALJ cited the six exhibits encompassing the State Agency consultants' opinions with notation that "these opinions are generally consistent with the [evidence] in the record." [DE 10 at 54]. The ALJ's RFC determination reflects the opinions of the State Agency consultants almost verbatim, with the addition of a restriction limiting Snider to frequent handling and fingering bilaterally.

## 2. Legal Standard

Generally, more weight is given to the opinions of treating sources because they are more familiar with a claimant's conditions and circumstances. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). For claims like Snider's filed before March 27, 2017, a treating source's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). When a treating source's opinion is not given controlling weight, the ALJ must consider the following factors: (1) the examining relationship, (2) the treatment relationship, specifically its length, nature, and extent, of the treatment relationship, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialty of the treating source. 20 C.F.R. § 404.1527(c); *see also Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

Additionally, the ALJ must provide good reasons in his decision for the weight given to the treating source's opinion and must not substitute his own judgment for the physician's opinion without relying on other medical evidence or authority in the record. *Id.*; *see also Sharbeck v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Clifford*, 22 F.3d at 869. Therefore, an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so and cannot disregard medical evidence that is at odds with the ALJ's unqualified interpretation. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).

### 3. Analysis

In challenging the ALJ's decision to afford little rather than controlling weight to Dr. Ricketts' opinions, Snider contends that the ALJ (1) failed to provide good reasons for discounting Dr. Ricketts' opinions in favor of the State Agency consultants' opinions; (2) failed to consider the record as a whole, including records of Snider's medical treatment after the State Agency consultants issued their opinions in early 2015; and (3) disregarded evidence at odds with the ALJ's conclusion. Snider's arguments are persuasive.

First, Snider directs the Court's attention to considerable medical evidence in the record that is not accounted for in the four exhibits the ALJ cites in support of her decision to discount Dr. Ricketts' opinions. Thus, the ALJ has not demonstrated that she considered the record as a whole, including evidence contrary to her own conclusions, in weighing the medical opinion evidence.

Second, the ALJ's brief explanation for discounting Dr. Ricketts' opinions does not cite with enough particularity which evidence is inconsistent with Snider's longitudinal treatment history or why his treatment reflects conservative care. Instead, the ALJ cites broadly to almost all of Dr. Ricketts' Office Treatment Notes for the two-and-a-half years he treated Snider and expects this Court to discern the supposed inconsistency and agree blindly with her that Snider's treatment constituted conservative care—a conclusion that is hard to understand without more explanation given the long list of surgeries, procedures, testing, treatments, office visits, and medications in Snider's medical record. In so doing, the ALJ failed to create the

necessary logical bridge between the evidence and her conclusion. *See Haynes*, 416 F.3d at 626; *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Moreover, the ALJ's abbreviated discussion of weight given to Dr. Ricketts' opinions failed to account for all the Section 1527 factors.

Third, the ALJ's chronological recitation of Snider's treatment before reporting her conclusion about the weight to be afforded the medical opinion evidence clearly shows her awareness that Snider underwent considerable medical care after the State Agency consultants reviewed his records in early 2015. Indeed, the ALJ reports that after the 2015 State Agency opinions, Snider underwent imaging and testing that revealed abnormalities in his cervical spine and physical changes to his brain as well as another carpal tunnel release surgery and a cubital tunnel release surgery. The ALJ also acknowledged Snider's allegations of worsening symptoms and new diagnoses related to his memory and concentration problems. Yet the ALJ still afforded more weight to the State Agency consultants' 2015 opinions based on arguably stale evidence than she afforded to Dr. Ricketts' January 2017 opinions that necessarily considered almost two more years of Snider's medical history.

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ

erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)). Without meaningful explanation, the ALJ here favored outdated medical opinions despite having access to a more updated opinion from Dr. Ricketts. Any reasons she may have had to do so are not adequately reflected in her decision.

In the end, Snider has demonstrated that the administrative record contains evidence that may contradict the ALJ's conclusions that Dr. Ricketts' opinions were inconsistent with Snider's longitudinal treatment history and that Snider's treatment history reflected conservative care. By failing to articulate with greater specificity the rationale for her conclusions, the ALJ fail to support her decision to discount Dr. Ricketts' medical opinions in favor of the State Agency consultants' outdated opinions with substantial evidence. Accordingly, this case must be remanded to the SSA for further consideration of Snider's applications for DIB and SSI.

### C. Subjective Symptom Analysis

The ALJ also discounted Snider's allegations at the hearing that he could not work due to symptoms arising from his back issues, pain, elbow and hand issues, and memory problems. In assessing a claimant's RFC, an ALJ must consider all the evidence in an individual's record, as well as the intensity and persistence of the individual's symptoms. SSR 16-3p. The ALJ must articulate his comparison of the evidence to the claimant's allegations sufficiently to assure the reviewing court that all the evidence was considered and to allow the court to trace the ALJ's reasoning. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).

Here, the ALJ concluded that Snider's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [DE 10 at 50]. The ALJ then found that Snider's allegations were not consistent with the evidence because (1) "[s]ince the alleged onset date, [Snider] has had essentially conservative treatment for the cervical and lumbar degenerative disk disease;" (2) there are "no surgical referrals in the medical evidence of record; (3) Dr. Ricketts' longitudinal treatment "is reflective of essentially conservative care;" (4) Snider's "carpal tunnel syndrome has been managed with releases and medications;" and (5) "Dr. Ricketts diagnosed [Snider] with vascular dementia with depression" while one of the neurologists to whom Dr. Ricketts referred Snider, Dr. Curfman, only diagnosed him "with attention problems" and advised him "to continue using his CPAP [for sleep apnea] and to exercise." [*Id.* at 53–54]. Yet, the ALJ once again cites the same four exhibits that include Dr. Ricketts' Office Treatment Records. She only provided a specific citation to Dr. Ricketts' diagnosis of vascular dementia with depression in February 2017 and Dr. Curfman's competing diagnosis and treatment recommendation.

An ALJ's credibility determination is treated deferentially and will only be overturned if it is "patently wrong" or "lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.* Infrequent treatment or

13

failure to follow a treatment plan can support an adverse finding regarding the severity of an individual's subjective symptom complaints. SSR 16-3p.

Snider contends that the ALJ substituted her own opinion over that of expert medical opinion in discounting the symptom testimony and failing to consider Mr. Snider's impairments in combination resulting in a flawed RFC. In support, Snider once again argues that his treatment was not conservative. Snider also points to evidence in the record of his history of surgical referrals that contradicts the ALJ. Moreover, Snider has identified evidence, as discussed above, of his consistent attempts to obtain relief of his symptoms by visiting medical specialists, trying different medications and prescribed treatments, and undergoing multiple surgeries. "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p.

Furthermore, the ALJ's credibility determination is based on her impermissibly selective omission of any accounting for symptoms consistent with Snider's medical diagnoses and treatments after the early 2015 State Agency opinions were issued. *See Scott v. Astrue*, 647 F. 3d 734, 740 (7th Cir. 2011). Snider points to evidence regarding his severe headaches after the 2015 State Agency review and argues that the ALJ dismissed them as "non-severe" without addressing the medical findings and treatment evidence concerning those headaches. The Commissioner does not directly address this issue. However, the ALJ's abbreviated discussion of Snider's headaches suggests that the ALJ

14

did not fully account for the effect of the headaches, in combination with his other impairments, on his symptoms. In other words, the ALJ's decision does not assure this Court that she considered all the evidence relevant to the subjective symptom analysis. *See* SSR 16-3p; *see also Yurt v. Colvin* 758 F.3d 850, 860 (2014) ("The fact that the headaches standing alone were not disabling is not grounds for the ALJ to ignore them entirely—it is their impact in combination with Yurt's other impairments that may be critical to his claim.").

As such, the ALJ's subjective symptom analysis lacks explanation or support and cannot stand. *See Cullinan*, 878 F.3d at 603. Accordingly, the Court must remand based on this error as well.

### D. Moderate Limitations in Mental RFC

As demonstrated above, the ALJ's RFC is not supported by substantial evidence because of her lack of logical bridge from the evidence of record to her conclusions about Snider's medical opinion evidence and his subjective symptoms. Snider also argues that the ALJ failed to incorporate limitations in his RFC consistent with her finding in the Step 3 Listing Analysis that he has moderate limitations in the Paragraph B mental categories of interacting with others, adapting or managing himself, and concentrating, persisting or maintaining pace. Without further analysis here, the Court directs the ALJ on remand to ensure that all of Snider's limitations supported by the medical record, including all mental limitations, are incorporated into his RFC. *See O-Connor-Spinner*, 627 F.3d at 619.

**III.    CONCLUSION**

For the reasons stated herein, the Court concludes that the ALJ's decision was not supported with substantial evidence. Therefore, the Court now **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The clerk is **DIRECTED** to terminate this case in favor of Snider.

**SO ORDERED** this 12th day of September 2019.

<pre>                                        s/Michael G. Gotsch, Sr.
                                        Michael G. Gotsch, Sr.
                                        United States Magistrate Judge</pre>